IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 21, 2016

**GORDON WAYNE DAVIS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 103692      Bobby Ray McGee, Judge**

_____

**No. E2015-00772-CCA-R3-PC – Filed September 9, 2016**

_____

The Petitioner, Gordon Wayne Davis, pleaded guilty to multiple felony offenses including one count of possession with intent to sell a Schedule II narcotic in a park zone, two counts of sale of a Schedule II narcotic, one count of possession of a firearm during the commission of a dangerous felony, and one count of simple possession. In accordance with the plea agreement, the trial court sentenced the Petitioner, a Range II offender, to an effective sentence of fifteen years, to be served at 100%. The Petitioner filed a petition for post-conviction relief in which he alleged that he had received the ineffective assistance of counsel and that his guilty plea was not knowingly and voluntarily entered. After a hearing, the post-conviction court dismissed the petition. On appeal, the Petitioner maintains that his counsel was ineffective and that his guilty plea was not knowingly and voluntarily entered. After review, we conclude that the post-conviction court erred when it dismissed the Petitioner's petition for post-conviction relief. We therefore reverse the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed**

ROBERT W. WEDEMEYER, J. delivered the opinion of the Court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ. joined.

Joseph Liddell Kirk, Knoxville, Tennessee, for the appellant, Gordon Wayne Davis.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Charme Allen, District Attorney General; and Hector Sanchez, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**
**A. Guilty Plea Hearing**

This case arises from the Petitioner's indictment in multiple cases, numbers 99522, 99633, and 99834. Because neither the indictments nor the judgments of conviction are included in the record, we include the State's summary to the trial court at the April 2015 guilty plea hearing of the charges to which the Petitioner pleaded guilty:

> [The Petitioner] will be pleading guilty to Count 1 to an amended offense. Your Honor, the case will be a Class B felony, that is, possession with intent to sell Schedule II, cocaine, more than 26 grams, in a drug-free park zone, not a drug-free school zone. The parties have agreed to amend the indictment to reflect as such.
>
> . . . .
>
> The recommended sentence, Your Honor, is 12 years at 100 percent, as a Range II offender. . . . The date of the offense was September 12th, 2011.
>
> Counts 2 through 5 will be dismissed.
>
> The [Petitioner] will also plead guilty in Count 6, to the Class D felony of possession of a firearm during the commission of a dangerous felony.
>
> Recommended sentence in that case is the mandatory-minimum, which is three years, to serve at 100 percent, consecutive to Count 1.
>
> And that was the same date of offense, September 12th, 2011.
>
> Counts 7 through 10 will be dismissed, per the agreement.
>
> . . . .
>
> Further, in 99522, the [Petitioner] will plead guilty in Count 1, to Class B felony, sale of Schedule II, cocaine, more than half a gram.
>
> Recommended sentence is eight years to serve, at Range I, 30 percent, concurrent with 99363. . . . the date was August 31st, . . . 2011.
>
> Count 2 will be dismissed.

2

And he will plead, again, in Count 3 to a Class B felony, a sale of Schedule II, cocaine, more than half a gram.

Again, recommended sentence eight years to serve at 30 percent, Range I, concurrent with 99363 and to Count 1.

. . . .

Count 4 will be dismissed, per the agreement.

Finally, in 99834, [the Petitioner], will be pleading guilty to the lesser-included offense of simple possession, a Class A misdemeanor.

Recommended sentence, 11 months and 29 days, concurrent with 99363. . . .

The date of the offense was February 9th, 2012.

Counts 2 and 3 will be dismissed, per the agreement.

Total effective sentence of 15 years, to serve at 100 percent.

The trial court then questioned the Petitioner about the voluntariness of his plea and his understanding of his rights. The trial court informed the Petitioner that these pleas would be a part of his criminal record and could be used against him in the future. The Petitioner indicated that he had reviewed the plea agreement with his attorney and that he understood the agreement. The trial court went through each of the rights that the Petitioner was waiving by pleading guilty, and the Petitioner indicated that he understood. The Petitioner indicated that he was entering into the plea agreement freely, voluntarily, and knowingly. He said that he was pleading guilty because he was in fact guilty.

The State then summarized the facts that it would have shown had the case gone to trial.

[Petitioner], this is to inform you that in 99363, the Grand Jurors for the State of Tennessee charge that in Count 1, on the 12th of September,

3

2012,[1] you did unlawfully and knowingly possess with intent to sell a Schedule II controlled substance, more than 26 grams of cocaine within 1,000 feet of the real property of a public park, in violation of TCA 39-17-432 and 39-17-417, and against the peace and dignity of the State of Tennessee.

Further, in Count 6, on the same date, you did unlawfully and knowingly possess a firearm, that is a Ruger .357 revolver, with the intent to go armed during the commission of a dangerous felony, in violation of TCA 39-17-1324, and against the peace and dignity of the State of Tennessee.

. . . .

[Petitioner], this is to inform you that the Grand Jurors charged that on the 31st of August, 2011, you did unlawfully and knowingly sell a Schedule II controlled substance, more than half a gram of cocaine, in violation of TCA 39-17-417, and against the peace and dignity of the State of Tennessee.

And in Count 3, on the 6th of September, 2011, you did, again, unlawfully and knowingly sell a Schedule II controlled substance, more than half a gram of cocaine, in violation of TCA 39-17-417, and against the peace and dignity of the State of Tennessee.

. . . .

And, You[r] Honor, the parties agree to waive formalities in 99834, being a misdemeanor.

The Petitioner offered a plea of guilty to each of these offenses, and the trial court entered his plea. The State then informed the trial court:

[I]f called to trial in this matter, the State would call witnesses listed on both indictments, who would testify, first, as to the offense of 99522, Officer Terry Pate of the Knoxville Police Department Repeat Offender

---

[1] We note that the State informed the trial court that the offense date as listed in the indictment was September 12, 2011. When summarizing the facts it listed the offense date as September 12, 2012. We again note that the indictment is not included in the record.

4

Squad, utilized a confidential informant to make purchases of crack cocaine out of [an apartment], which is the residence of [the Petitioner].

On August 31st, 2011, . . . Officer Pate utilized a CI, provided the CI with undercover funds and undercover audio and video recording devices. The CI was taken to [the same apartment] and met with [the Petitioner].

At that point, the CI exchanged $120 in undercover funds for an amount of crack cocaine that was sent to the TBI crime lab to confirm it to be cocaine base, in the amount of 2.01 grams, that that evidence and the digital recordings were turned over to Officer Pate.

Again, on September 6, 2011, Officer Pate, again, used a confidential informant to purchase out of [the same apartment]. The same procedures were followed. And the CI was given, this time, $150 to purchase what came back from the lab as 2.51 grams of Schedule II, cocaine base.

The CI was observed going into that apartment, met with [the Petitioner], and exchanged the cash for the cocaine. The video recording devices were turned over to the officers, as were the drugs.

. . . .

Now, Your Honor, based on those purchases of cocaine out of the residence, officers sought and obtained a search warrant for that residence, naming [the Petitioner] in the search warrant.

And on September 12, 2011, Officer Pate and other officers went to execute that search warrant. They observed [the Petitioner] sitting in a vehicle. He exited the apartment, got into a vehicle and started driving away. Officer Pate had the [Petitioner] stopped because he also had a suspended driver's license.

[The Petitioner] was found to be in possession of what came back from the lab as 28.07 grams of Schedule II cocaine. Also, inside the residence were two revolvers, one of which was that Ruger.357 revolver stipulated to.

5

Your Honor, officers . . . [M]irandized [the Petitioner]. And he agreed to speak with them. He admitted possessing the cocaine and that he had been selling out of the apartment for a period of time.

He further stated that he had traded an 8-ball of cocaine, or an eighth ounce for two guns earlier that morning, and that he intended to then flip those guns for approximately $300.

He stated that he had sold marijuana that day and did possess . . . those 28 grams with the intent to sell them.

The events took place within 1,000 feet of Rock City Park, which is a park here in Knox County.

The Petitioner stipulated that the State would have proven these facts had the case gone to trial. The trial court entered the Petitioner's plea and the sentence agreed to by the parties. The trial court stated, "The total effective sentence is 15 years. And it says at 85 percent. It's actually 100 percent with the possibility of 15 percent reductions."

## B. Post-Conviction Facts

In June 2014, the Petitioner filed a timely petition for post-conviction relief alleging that his counsel was ineffective. The post-conviction court appointed counsel and held a hearing during which the parties presented the following evidence: The Petitioner testified that three months after Counsel was appointed to represent him Counsel presented him with a plea offer from the State. He said that, at the time, he was aware that he had been charged with three separate felony drug-related offenses. The Petitioner, who had a passenger with him at the time he was arrested for possessing twenty-eight grams of cocaine, said that he asked Counsel about a motion to suppress. Counsel told him that it was "too late or something like that."

The Petitioner testified that his co-defendant had a hearing on a motion to suppress but that the Petitioner never had such a hearing. The Petitioner said that his co-defendant successfully defended the charges and was released from incarceration. The Petitioner said that he discussed this fact with Counsel, who told him that his case was different from his co-defendant. Counsel explained that the State had separated their cases. The Petitioner said that he asked Counsel to file a motion to suppress but that Counsel never did.

The Petitioner agreed he pleaded guilty to possessing a firearm. He said that the firearm was found at the apartment, which belonged to Amber Evans. He testified that he

6

had not rented the apartment and was not listed on the lease. The Petitioner contended that, at the time of his arrest, he had not been staying at the apartment but rather he was just "hanging out" there because Ms. Evans was his friend from high school. The Petitioner said that there were "a couple of other people" who were selling narcotics out of the apartment.

The Petitioner testified that he and Counsel discussed a trial strategy. If the case went to trial, their plan included the Petitioner testifying that he was not selling drugs in a school zone. The Petitioner said that he did not understand how the school zone charge would affect his sentence, if convicted. The Petitioner said that he understood, with regard to the plea agreement, that he would serve 85% of his sentence. The Petitioner said that Counsel first relayed the State's plea offer of eighteen years at 85%, but he declined this offer. He said that Counsel never informed him of the total time he would serve pursuant to the plea offer he did accept. Counsel only told him that, if he lost at trial, he would serve thirty to sixty years in prison. The Petitioner said that he was "in shock" because he had never been to prison before and had never previously been charged with a serious offense. The Petitioner said that he pleaded guilty to avoid a thirty-year sentence.

The Petitioner testified that he discussed with Counsel the proof that he was within 1,000 feet of a school zone, but he said that Counsel never gave him an "actual distance" or a map. He did not independently believe that he was within 1,000 feet of a park. He said that he had never been to Rock City Park and that he was not aware that there was such a park in the vicinity.

The Petitioner said that he admitted to the police that he possessed the twenty-eight grams of cocaine that they had found in his pocket. The Petitioner acknowledged that he understood he would be charged with this offense. He said, however, that he was unaware that he was in a park zone at the time.

The Petitioner said that Counsel told him that he would serve 85% of his sentence. He said that, however, he later learned that he was not eligible for release until 100% of his sentence was served. The Petitioner also learned that his co-defendant had been released from incarceration. The Petitioner testified that he sought post-conviction relief after he learned that he would have to serve 100% of his sentence and after he learned that his sentences were ordered to run consecutively.

The Petitioner testified that Counsel told him before the guilty plea hearing to respond "yes" to the trial court's questions. The Petitioner said that he complied with this request but did not really understand the substance of the trial court's questions. He said

7

that he was not satisfied with Counsel's representation of him, a fact that impacted his decision to enter a plea of guilt.

During cross-examination, the Petitioner acknowledged that he pleaded guilty on June 27, 2013, and that, at the time, he understood that the agreement included a sentence of fifteen years of incarceration. The Petitioner conceded that the trial court at his guilty plea hearing informed him of his constitutional rights and ensured he understood those rights. He said, however, that he only answered that he understood those rights because Counsel told him to answer "yes" to the judge's questions.

The Petitioner agreed that he signed the guilty plea form itself but said that, at the time, he did not know that he was entering his plea as a Range II offender. He maintained that he thought he would serve his sentence at 85% rather than 100%.

On redirect-examination, the Petitioner said that, had he known that he would serve his sentence at 100%, he would not have pled guilty.

The State informed the trial court that it had spoken with Counsel who informed the State that he had, in fact, told the Petitioner that the service of his sentence would be at 85% and not 100%.[2] Additionally, the Petitioner's judgment reflected a sentence of 85%. The Petitioner's attorney and the post-conviction court discussed that, while some sentences are subject to earning a fifteen percent reduction, the sentences in this case are not.

Based upon this evidence, the post-conviction court found:

I notice in the amended petition for post-conviction relief, the statement is made by agreement, the [P]etitioner received total effective sentences of 15 years, to be served at 100 percent; 12 at 100 percent for the park zone, plus three at 100 percent for the weapon offense.

Apparently, trying to put all this together . . . he did understand that he was being sentenced to 15 years at 100 percent, but was told by [C]ounsel that he would be eligible for up to 15 percent sentence reduction[]

. . . .

---

[2]In practice, this Court finds it more beneficial to have Counsel testify rather than to have the State enter a stipulation regarding what Counsel's testimony would have been.

8

[T]he claim here is ineffective assistance of counsel. And . . . what the [P]etitioner must show is that the assistance of counsel that he received was so ineffective that his Constitutional right to a fair trial was violated, or some due process right was violated.

[A] great bit of what's happened here is the [P]etitioner accepted his fate until he found out that [his co-defendant] ended up getting out of jail . . . quicker than he was going to. He's looking at 15 years day-for-day. And, apparently, [the co-defendant] got out in, it looks, apparently, less than two years.

[The Petitioner] has no Constitutional right to the agreement that the State entered into with [the co-defendant]. And so whatever the agreement was with [the co-defendant], it could not violate [the Petitioner's] Constitutional right.

Now, this is not . . . I know the phrase, allow him to set aside his guilty plea. This is not a case that falls under the Rule of Criminal Procedure that allows the withdrawal of a guilty plea. The judgment clearly became final before this issue was raised.

So the Court must look at this, not in terms of just setting aside a guilty plea, which, by the way, if the case . . . had been back at the time of the plea, this Court probably would have set it aside. But at this point, the court has to look at it in terms of whether or not . . . the advice rendered by [C]ounsel constitutes such ineffective assistance of counsel that [the Petitioner's] Constitutional rights had been violated, which brings this Court to this question: Is there a Constitutional right to a particular release eligibility date? And it would appear to this Court the answer to that question is no. There is no Constitutional requirement that a person who was sentenced to 15 years ever be released in less than 15 years. The State has the right to keep them in prison for 15 years.

Release eligibility date doesn't mean you get out, it just means that, under our law, that's the point at which the State has to start considering letting you out.

And the fact that [the co-defendant] is not going to have that release eligibility date, in this Court's view, does not constitute a violation of his Constitutional rights. And accordingly, the petition fails.

9

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that his guilty plea was not knowingly and voluntarily entered because he thought that he was going to serve his sentence at 85% rather than 100%. He asserts further that Counsel was ineffective for misinforming him in this regard. He further asserts that the evidence showed that he was frustrated with Counsel's lack of interest in pursuing a motion to suppress, and in explaining the park zone enhancement. He described himself as in a frightened, confused, and emotional state when he entered his plea of guilt. The State counters that the Petitioner has not proven that he is entitled to post-conviction relief.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial

whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland,* 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad,* 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at

694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). In the context of a guilty plea, as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (footnote omitted); *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

In the case under submission, we conclude that the post-conviction court erred when it denied the Petitioner post-conviction relief. According to the State, Counsel agreed that he informed the Petitioner that, in accordance with the plea agreement, he would serve his sentence at 85%. The Petitioner then entered his plea, and, during the hearing, all the parties agreed that the Petitioner's sentence was to be served at 85%. At the conclusion of the hearing, the trial court informed the Petitioner that his sentence was to be served at 100% with the possibility of fifteen percent reductions, seemingly confirming what Counsel had said to the Petitioner. The difference to the Petitioner is two years and three months more of incarceration. Counsel's informing the Petitioner that he would be released after serving 85% of his sentence was ineffective.

In order for the Petitioner to prevail herein, he must show, by clear and convincing evidence, that his attorney failed to properly advise him of the possible consequences of his plea and that Counsel's failure to do so resulted in prejudice. Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. *See Hill,* 474 U.S. at 56. We have concluded that Counsel was ineffective for failing to accurately inform the Petitioner that his sentence was not eligible for sentencing credit and that he would be required to serve the fifteen-year sentence day-for-day. We, therefore, turn to address whether the Counsel's deficient performance rendered the Petitioner's guilty plea unknowingly and involuntarily entered.

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). The circumstances include:

the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (citing *Caudill v. Jago*, 747 F.2d 1046, 1052 (6th Cir. 1984)). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." *Id.*

In the case under submission, the post-conviction court found that the Petitioner understood that he was being sentenced to 100% but that he could be eligible for release at 85%. The statement by the State, however, was that Counsel conceded that he told the Petitioner he would be released at 85%, with no mention of his being sentenced at 100%. The post-conviction court also found that, had the Petitioner filed a motion to withdraw his guilty plea on this basis that the court "probably" would have granted the motion. The court went on to say, however, that because the Petitioner had no "Constitutional right to a particular release eligibility date" that he was not entitled to post-conviction relief. We cannot agree.

We find instructive the cases discussing whether a petitioner is entitled to post-conviction relief in the context of the parole eligibility requirements of the sex offender statute. These cases distinguish between circumstances in which the petitioner's counsel *fails to inform* the petitioner of release requirements of the sex offender statute, and when the petitioner's counsel *misinforms* the petitioner of such requirements.

In *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003), the petitioner argued that his guilty pleas to two counts of attempted rape were rendered unknowing and involuntary because he was not advised of the mental health requirements he would be required to meet as a sex offender, pursuant to Tennessee Code Annotated section 40-35-503(c) (2003), before he could be released on parole. In rejecting the petitioner's claim, our Supreme Court distinguished the facts of his case, in which he was advised of the accurate parole eligibility date but not informed of the specific conditions he would be required to meet to achieve release, from the facts in *Howell v. State*, 569 S.W.2d 428, 435 (Tenn. 1975), in which the Court granted a petitioner post-conviction relief on the basis that he entered his guilty plea while under a misunderstanding about his release eligibility date:

Unlike the defendant in Howell, Mr. Jaco was not misinformed about his parole eligibility date. He will in fact become parole eligible after serving thirty percent of his sentence although he may not actually be released. His release eligibility date is simply the point at which he will be considered for parole under the applicable standards . . . .

In this case, the post conviction trial court found that no sex offender has been released after serving only thirty percent of his sentence unless the mental health professional concluded that a future sex offense was physically impossible. Nonetheless, a Range I standard offender convicted of a sex crime becomes parole eligible after serving thirty percent of the actual sentence imposed. Tenn. Code Ann. § 40-35-501(c) (2003). The required evaluation affects the likelihood of actual release, but it does not affect the release eligibility date. Thus, unlike the defendant in Howell, Mr. Jaco received accurate information regarding his release eligibility date prior to entering his plea.

*Jaco*, 120 S.W.3d at 832.

This Court similarly concluded that erroneous information given to a petitioner - that certain of his sentences would run concurrently - entitled him to the appointment of counsel and an evidentiary hearing on the issue of whether his guilty pleas were unknowing and involuntary. *Charlton v. State*, 987 S.W.2d 862, 867 (Tenn. Crim. App. 1998). We held that a petitioner is entitled to "rely upon the advice of his attorney, especially when confirmed by the trial judge." *Id.* Further, we concluded that, "If, based upon the particular circumstances of this case, it is established that the plea agreement was entered into under the collective misunderstanding that [the sentences] would be concurrently served, the plea agreement should be set aside as neither knowing nor voluntarily made . . . ." *Id.*

We have, in other instances, granted a petitioner post-conviction relief when his guilty plea is entered after having been significantly misinformed. *See Joseph A. Maine v. State*, No E2004-00143-CCA-R3-PC, 2005 WL 1996631, at *7 (Tenn. Crim. App., at Knoxville, Aug. 19, 2005) (granting post-conviction relief when a petitioner was misinformed about the sentences he would be required to serve), *no Tenn. R. App. P. 11 application filed*; *cf. Thomas Studdard v. State*, No. W2004-00500-CCA-R3-PC, 2006 WL 2771033, at *7 (Tenn. Crim. App., at Jackson, Sept. 27, 2006) (denying post-conviction relief when counsel correctly informed the petitioner of his parole eligibility date but failed to inform the petitioner about the requirements he must complete prior to being paroled), *no Tenn. R. App. P. 11 application filed*.

In the case under submission, considering the totality of the circumstances, we conclude that the Petitioner's guilty plea was not knowingly and voluntarily entered. This is the Petitioner's first "serious" offense, he had never before been incarcerated, and his trial counsel misinformed him about his release eligibility date. Counsel told the Petitioner that he would be released after serving 85% of his sentence, which is two years and three months less than he will be required to serve pursuant to this plea agreement. The trial court also misinformed the Petitioner his sentences were eligible for an up to fifteen percent reduction, confirming to the Petitioner the information given to him by Counsel. These sentences must, by statute, be served day-for-day. The Petitioner turned down the State's initial eighteen year offer, which he believed would require him to serve between fifteen and sixteen years. He insisted, against Counsel's advice, on going to trial. Counsel then brought him a second offer by the State of fifteen years, to serve at 85%, or twelve years and nine months, and the Petitioner reluctantly agreed, only to later learn that he was required to serve two years and three months more than Counsel had stated. He testified that but for the ability to receive this 15% credit he would have insisted on going to trial, and his credibility on that issue is not challenged. Under these circumstances, we conclude that the Petitioner, relying on Counsel's advice, was significantly misinformed. Therefore, under such circumstances, his plea cannot be found to have been knowing and voluntary. Accordingly, we reverse the post-conviction court's denial of the petition and remand for the Petitioner to withdraw his plea and for further proceedings consistent with this opinion.

## III. Conclusion

Based on the foregoing reasoning and authorities, we reverse the judgment of the post-conviction court and remand the matter for the Petitioner to withdraw his best interest plea and for further proceedings consistent with this opinion.

_____
ROBERT W. WEDEMEYER, JUDGE

15